Maxine **MEHUS**, Plaintiff,

v.

**EMPORIA STATE UNIVERSITY,**
Defendant.

No. 03–2066–KHV.

United States District Court,
D. Kansas.

July 30, 2004.

Anne W. Schiavone, Kansas City, MO, R. Denise Henning, Stephen R. Bough, Henning & Bough, PC, Kansas City, MO, for Plaintiff.

Malcolm R. Burns, Lawrence, KS, Lori R. Schultz, Stinson Morrison Hecker LLP, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff Maxine Mehus, head volleyball coach at Emporia State University ("ESU"), alleges that ESU has violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Specifically, plaintiff alleges that ESU has paid her less than similarly situated male counterparts for equal work which requires similar effort, skill and responsibility, performed under similar working conditions, in violation of the EPA. Plaintiff also claims that in violation of Title VII, ESU subjected her to different terms, conditions and privileges of employment than similarly situated male colleagues by (1) providing her a ten-month appointment while providing 12-month appointments to similarly situated males; (2) requiring her to teach while not requiring similarly situated males to do so; and (3) paying her less than similarly situated males for equal work which requires substantially similar skill, effort and responsibility. This matter comes before the Court on *Plaintiff's Motion In Limine* (Doc. # 118) filed July 14, 2004. For reasons stated below, the Court sustains plaintiff's motion in part.

### 1. Findings And Conclusions Of The Grievance Committee

 Plaintiff asks the Court to preclude evidence of internal Grievance Committee findings with regard to her sex discrimination charge, but permit evidence about the existence of the Grievance Committee, its recommendations that ESU better define its "core athletics programs," evaluate all job descriptions associated with coaching staff over a three-year period, write new job descriptions for all coaches and offer 12–month contracts to all coaches who are expected to recruit during summer months. Plaintiff also seeks to admit evidence that ESU ignored the Grievance Committee recommendations. ESU asks the Court to exclude *any* reference to the Grievance Committee because such evidence lacks relevance and may confuse and mislead the jury.

 The Court finds that all findings and recommendations of the Grievance Committee should be excluded. On this record, it appears that such findings and recommendations constitute nothing more than the lay opinion of randomly selected faculty members and other individuals who concluded (among other things) that plaintiff's claim of sex discrimination was without merit. It is not clear that the Grievance Committee had any authority to recommend general changes in the administration of the athletics department at ESU, and the fact that ESU ignored the Grievance Committee recommendations has no apparent relevance in this case. Likewise, the fact that the Grievance

Committee recommended better definition of "core athletics programs," re-evaluation of coaching staff job descriptions, and new job descriptions for coaches has no apparent relevance to the issues in this case. The Grievance Commission recommendation that ESU offer 12–month contracts to all coaches who are expected to recruit during summer months has slight relevance, but it is outweighed by dangers of confusion of the issues, undue delay and waste of time under Rule 403, Fed.R.Evid.

### 2. Exhibits For Which Proper Foundation Cannot Be Laid

█ Plaintiff generally asks the Court to exclude exhibits for which proper foundation cannot be laid. The Court agrees that as a general matter, such evidence should be excluded. As is usually the case, however, the devil is in the details. Plaintiff specifically asks the Court to exclude communications in which individuals who are not agents or employees of ESU criticize plaintiff's coaching performance. Plaintiff argues that (1) the documents are hearsay and do not constitute business records of ESU or fall within any other hearsay exception, see Rules 801–804, Fed. R.Evid.; (2) the communications cannot be authenticated because the authors have not been identified as trial witnesses; and (3) the prejudicial impact of the communications outweighs their probative value.

█ The Court finds that regardless whether the communications are truthful, their very existence and content may be relevant to plaintiff's damage claim for emotional distress. The complaints were apparently communicated to plaintiff, and "[t]he case law recognizes that a plaintiff claiming emotional distress opens the door to evidence of other probable causes of her distress." *Rettiger v. IBP, Inc.*, No. 96–4015–SAC, 1999 WL 318153, at *2 (D.Kan. Jan 06, 1999); *see also, York v. Am. Tel. &*

*Tel. Co.*, 95 F.3d 948, 957–58 (10th Cir. 1996). If the significance of an offered statement lies in the fact that the statement was made, rather than the truth of anything asserted, the statement is not hearsay. *See* Advisory Committee Notes to Rule 801(c), Fed.R.Evid. (citing *Emich Motors Corp. v. General Motors Corp.*, 181 F.2d 70 (7th Cir.1950) *rev'd on other grounds* 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951) (letters of complaint from customers held not to be hearsay)).

█ ESU apparently seeks to offer these communications to also establish that "plaintiff's public relations failures make her less marketable and justify a discrepancy in her wages." Use for these purposes assumes the truth of the matters asserted, *i.e.* that for the reasons stated in the communications, plaintiff did not have good public relations with the authors or other members of the public.

The Court must therefore determine whether the communications are hearsay and, if so, whether they fall within any exception to the hearsay rule. On this record, it cannot do so. Under the business records exception to the hearsay rule, hearsay documents may be offered into evidence so long as the documents (1) were made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) were prepared and kept in the course of a regularly conducted business activity. Fed.R.Evid. 803(6). The Court cannot discern whether either requirement is met as to the communications in question.

█ In order for ESU to lay an appropriate foundation that the documents were made or transmitted by a person with knowledge at or near the time of the incident recorded, ESU would presumably need to call as witnesses the authors of the

communications.[1] None of the authors have been properly disclosed under Rule 26, Fed.R.Civ.P. ESU argues that its default is justified because under the Advisory Committee Notes to Rule 26(e), a party has no obligation to provide "supplemental or corrective" information that has been otherwise made known to the parties in writing or during the discovery process. Rule 26(e), however, assumes that Rule 26(a) disclosures have been made. It addresses a party's duty to supplement Rule 26(a) disclosures to recite "information thereafter acquired" and "corrective information that has not otherwise been made known to the other parties during the discovery process or in writing." ESU's argument is that by disclosing a document, it has sufficiently disclosed its intent to "call the authors as witnesses at trial to authenticate the complaint documents." This argument has two problems: (1) it is not the law; and (2) even if the authors are allowed to "authenticate" the communications and thus avert what ESU calls an exaltation of "form over substance," mere authentication will not suffice to lay an appropriate foundation for purposes of the hearsay rule.

The Court cannot find, on this record, that ESU had substantial justification for failing to disclose the authors as witnesses in this case. Moreover, its failure is obviously not harmless. Plaintiff had no reason to depose witnesses whom defendant did not identify, and she has not had an opportunity to cross-examine the writers of the communications. Accordingly, the Court finds that testimony from these individuals should be excluded under Rule 37(c)(1). Unless ESU can independently lay a foundation for these exhibits at trial, they will be excluded as evidence of the truth of the matters asserted therein. Because the communications are relevant to plaintiff's damage claim without regard to the truth of the matters asserted, the Court overrules plaintiff's motion on this point.

### 3. Player Criticism Of Plaintiff's Volleyball Expertise And Technical Skills

■ Plaintiff asks the Court to exclude player criticism of her volleyball expertise, coaching abilities and technical skills, arguing that players are not qualified to testify on this topic and that any relevant evidence must come solely from experienced coaches. The Court disagrees. Plaintiff's argument lacks merit because (a) many aspects of coaching performance may be fairly analyzed and evaluated without expert testimony as that term is defined by Fed.R.Evid. 702; and (b) players have the requisite experience and specialized knowledge to opine as to plaintiff's coaching ability. Rule 701, Fed.R.Evid., allows lay persons to testify to opinions that are "(a) rationally based on the perceptions of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Plaintiff's motion on this point is overruled.

### 4. Testimony Of Dr. Mark Stanbrough

■ Plaintiff seeks to exclude the testimony of Dr. Mark Stanbrough, Chair of the Health, Physical Education and Recreation Department, because ESU did not timely disclose his identity or the nature of his testimony. ESU admits that it did not disclose Dr. Stanbrough in its initial or supplemental Rule 26 disclosures, but argues that its failure is harmless because

---

1. If ESU has a different strategy for laying a foundation which is sufficient to establish the admissibility of these documents which does not depend on the testimony of the authors, the Court will consider that matter at trial.

"[p]laintiff has been well aware for some time that Dr. Stanbrough occupied a position at issue in this case."

On this record, however, the Court cannot find that ESU had substantial justification for failing to disclose Dr. Stanbrough or that its failure is harmless. As noted, plaintiff had no reason to depose witnesses whom defendant did not identify. Her knowledge that "Dr. Stanbrough occupied a position at issue in this case" is no substitute for compliance with Rule 26. Dr. Stanbrough's testimony is therefore excluded under Rule 37(c)(1).

### 5. Testimony Of Shawn Shoemaker

Plaintiff asks the Court to preclude the testimony of Shawn Shoemaker, an individual who did not hold the position of Interim Athletic Director, because ESU did not timely disclose his identity or the nature of his testimony. ESU acknowledges that it did not disclose this witness in either its initial or supplemental Rule 26 disclosures, but argues that its default is harmless because "[p]laintiff has been well aware for some time that Mr. Shoemaker is a person with knowledge in this matter." Plaintiff's motion is sustained for reasons stated above, with regard to Dr. Stanbrough.

### 6. Testimony Of Jessica Stambaugh

Plaintiff moves the Court for an order precluding testimony from Jessica Stambaugh, who will purportedly testify that plaintiff "served a volleyball at [a] player's head after the player just had a concussion." Plaintiff argues that ESU did not timely disclose the identity of this witness or the nature of her testimony. ESU again admits that it did not disclose this witness in its initial or supplemental Rule 26 disclosures, but it insists that its failure is harmless because "[p]laintiff has been well aware for some time that Ms. Stam-

baugh is a person with knowledge in this matter regarding the physical and emotional abuse that ESU volleyball players are subjected to at [p]laintiff's hands." For reasons stated with regard to Dr. Stanbrough and Shawn Shoemaker, plaintiff's motion is sustained as to Jessica Stambaugh.

### 7. Argument Or Comment Regarding Pleadings

Plaintiff asks the Court to direct that ESU be precluded from commenting on or inquiring into the allegations or claims contained in the pleadings, especially the fact that she dismissed the Title IX and Title VII hostile work environment counts of the complaint. ESU agrees that references to the fact of these claims, and evidence relevant solely to these claims, should be excluded. Plaintiff's motion on this issue is sustained. If defendant wishes to refer to pleadings, it shall initially do so outside the hearing of the jury so the Court will have an opportunity to further rule on this issue.

### 8. Argument Or Comment Regarding Filing Motions And Exclusion Of Evidence

Plaintiff moves the Court for an order prohibiting defense counsel from commenting on or inquiring into the contents or disposition of plaintiff's motion in limine, and instructing that no comment or inquiry suggest to the jury that plaintiff has moved to prohibit certain proof or that the Court has excluded proof of any particular matter. ESU agrees that no witness or counsel should make references to such matters, and plaintiff's motion on this issue is sustained.

### 9. Offers Of Settlement Or Offers Of Partial Settlement And Responses Thereto

Plaintiff asks the Court to prohibit any reference to settlement. ESU does not

oppose plaintiff's motion, and it is sustained.

### 10. Evidence Regarding Income And Losses From Gambling

 Plaintiff asks the Court to prohibit any reference to her gambling winnings and losses because they are irrelevant and any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence under Fed.R.Evid. 403. ESU argues that plaintiff's gambling losses—which obviously are large in relation to her salary—are relevant to her claim for damages for emotional distress. The Court agrees. Through her damage claim, plaintiff has made such evidence relevant. Any concern that jurors could take a "dim view" of gambling may be addressed in the jury selection process. Plaintiff's motion on this point is overruled.

### 11. Financial Condition Of The State Of Kansas And/Or Emporia State University

 Plaintiff moves the Court for an order prohibiting ESU from presenting evidence or commenting on the financial condition of the State of Kansas and/or Emporia State University because it is irrelevant and their poor financial condition cannot justify the financial disparity between plaintiff's salary and the salaries of other ESU coaches. ESU responds that its budget and financial condition are relevant to the operations and funding of the Athletic Department and the decisions which it has made with respect to coach salaries and raises. The Court finds that the financial condition of the University, particularly as it affects the Athletic Department, is relevant to issues whether ESU discriminated against plaintiff by (1) providing her a ten-month appointment while providing 12-month appointments to similarly situated males; (2) requiring her to teach while not requiring similarly situated males to do so; and (3) paying her less than similarly situated males for equal work which requires substantially similar skill, effort and responsibility. The legitimate non-discriminatory reasons which ESU has advanced are ones which necessarily play out against a backdrop of limited financial resources. While the jury does not need to know every detail of ESU's financial condition, some understanding of this issue will be necessary. This aspect of plaintiff's motion is therefore overruled.

### 12. Evidence That A Monetary Judgment Would Be Paid From Taxpayers Dollars

Plaintiff moves the Court for an order prohibiting any reference to the fact that a monetary judgment would ultimately be paid from taxpayer dollars. ESU has no intention of arguing this issue to the jury. Plaintiff's motion is therefore sustained on this issue.

**IT THEREFORE ORDERED** that *Plaintiff's Motion In Limine* (Doc. # 1 18) filed July 14, 2004 be **SUSTAINED** as to paragraphs 1, 4, 5, 6, 7, 8, 9 and 12 and **OVERRULED** as to paragraphs 3, 10 and 11. As to paragraph 2, defendant may not use evidence of communications in which individuals criticize plaintiff's coaching performance to prove the truth of the matters asserted. Defendant may, however, offer such evidence with regard to plaintiff's damage claim.

**IT FURTHER ORDERED** that the parties confer in good faith to resolve all outstanding objections to witnesses, exhibits and deposition testimony, based on the rulings contained in this order. The Court will not entertain any such objections un-

less and until the parties have attempted in good faith to resolve the dispute among themselves either in person or via telephone conference. If any objections remain after such conference, the objecting party shall notify the Court no later than one business day before trial.